IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RESHAN SAVAGE BEY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 24-CV-1786 |
| | : | |
| **AYLSSA AMOROSO,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                          JUNE 20, 2024

      Reshan Savage Bey, a pretrial detainee housed at the Philadelphia Detention Center, filed a lengthy and repetitive 98-page *pro se* civil rights Complaint naming as Defendants Assistant District Attorney Aylssa Amoroso, SEPTA police officers Sgt. Bryan Carney, Anthony Michetti, and Grabov, and the City of Philadelphia.[1]  The individuals are each named in their individual and official capacities.  Bey has also applied to proceed *in forma pauperis*.  For the reason set forth, the request to proceed *in forma pauperis* will be granted and the case will be dismissed on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Bey identifies as a Moorish American National and has attached numerous pages to his Complaint, including spurious legal papers that he claims the state courts refuse to accept and thereby grant him relief based upon their content. (Compl. at 9.)  The numerous pages of exhibits contain sovereign citizen verbiage about the status of the United States, holders in due course, jurisdiction, the Uniform Commercial Code, and incomprehensible legalisms that the Court will not recount.  (*See* Compl. at 9-12, 14-15; ECF No. 2-1 at 7, 25-32, 38-96.)  Portions of the Complaint that merely repeat other allegations will also not be cited in this screening Memorandum.

      Bey does not spell or provide his name consistently in the Complaint.  The Court notes he has also filed civil cases in this District under the name "Rashan-I: Savage."  *See Savage v. Lederer*, No. 19-1114 (E.D. Pa.); *Savage v. City of Philadelphia*, No. 21-4136 (E.D. Pa.).  The Court will refer to him as "Bey."

I.   **FACTUAL ALLEGATIONS**[2]

In his complaint, Bey asserts that Defendant Carney conducted an investigation of an April 29, 2022 robbery at 15th and Market Streets in Philadelphia that violated his rights. (*Id*. at 19-20, 29.) Bey went to SEPTA police headquarters on April 30, 2022 and was interviewed. (*Id*. at 19.) The victim allegedly failed to identify Bey from a photo lineup. (*Id*. at 19-20.) Nonetheless, Bey asserts he was unlawfully detained on May 4, 2022 by Defendant Grabov at 15th and Market Streets for about 20-45 minutes when allegedly there was no warrant for his arrest on robbery charges. (*Id*. at 13, 19.) He claims that Carney instructed officers in the area to stop him for the alleged robbery. (*Id*. at 19-20.) He was released on that date, but Carney was "very aggressive, hostile" and made false allegations that Bey was "on surveillance robbing and assaulting someone at gunpoint, who is artistic [possibly meaning autistic], and that I was expelled from public transportation for one (1) year." (*Id*. at 20.)

Then, on June 7, 2022 at the same location, Defendant Michetti approached Bey and asked him for identification, stating there was a warrant for Bey's arrest. (*Id*. at 13.) When Bey asked to see the warrant, Michetti refused to produce it or describe the basis for the warrant. (*Id*. at 13, 20.) When Bey produced identification showing his name as Rashan I. Savage, he was arrested for the April 29 robbery, but the charges were later dismissed for lack of evidence on November 15, 2022. (*Id*. at 13.) He asserts that while he was in custody at SEPTA police headquarters he had to wear "an arm band that clearly indicated [he] was unlawfully arrested," was handcuffed and placed in a cold cell when he refused to be fingerprinted, and was not allowed to make a phone call. (*Id*. at 23.) He claims he was unlawfully detained from June 7, 2022 until November 15,

---

[2]   The facts set forth in this Memorandum are taken from Bey's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

2

2022. (*Id*. at 6.) Bey asserts constitutional claims based on false arrest and false imprisonment due to the June 7th arrest. (*Id*. at 16, 19-23.) He also raises a First Amendment retaliation claim against Carney, Michetti, and Grabov based on the May 4, 2022 stop, alleging that the stop occurred because Bey had filed an amended complaint on April 12, 2019 alleging a false arrest claim based on an incident on April 6, 2018, that also happened at 15th and Market Streets. (*Id*. at 25-26.)

On September 5, 2023, two unknown non-defendant Philadelphia police officers allegedly came to Bey's residence with a subpoena for refiling the dismissed charges. (*Id*. at 7, *see also id.* at 13.) At a hearing on October 12, 2023, Bey challenged the court's jurisdiction under the common law and the law of admiralty, but he claims that the Judge would not answer him and ADA Amoroso allegedly failed to object to his jurisdictional challenge. (*Id*. at 7.) He refused to participate in any mental health evaluation. (*Id*.) At his next court dates on December 14, 2023 and February 15, 2024, he again objected to the court's jurisdiction and refused to participate in mental health evaluations. (*Id*. at 7-8, 14, 18-19.) He claims that Amoroso and the presiding judge were "cohorting" to have him forcibly abducted to Norristown State Hospital ("NSH") for sixty days without his consent. (*Id*. at 8.) After the February 15th hearing he was allegedly placed in a cell, strip searched, had his legal material temporarily held, handcuffed to another prisoner, and transferred to Curran-Fromhold Correctional Center. (*Id*.) His request for court transcripts were also refused and documents he submitted to the court were not filed on the docket. (*Id*. at 8-9.)

Bey asserts that Amoroso and "said SEPTA transit police officers" – presumably Carney, Michetti, and Grabov – engaged in a "fraudulent non-disclosure of adhesion impaired contracting," by which he appears to refer to the criminal complaint, subpoena, and an allegedly forged affidavit of probable cause in his criminal case. (*Id*. at 9.) These documents, he asserts, resulted in his

being falsely imprisoned even though the victim failed to identify him and Amoroso failed to prove the state court had jurisdiction.  (*Id*. at 12-13.)

Bey asserts that at the February 15, 2024 hearing he was erroneously ordered by a Common Pleas Court judge to be confined at NSH.  (Compl. at 5.)  He was, instead, confined at a county prison for a "psychological disorder."  (*Id*.)  He asserts that ADA Amoroso refiled criminal charges against him three times "without substantial evidence," leading to the charges being dismissed due to lack of evidence and lack of prosecution, apparently because the alleged victim failed to identify Bey.  (*Id*. at 6.)  In doing so, Bey asserts that Amoroso committed barratry and champerty.  (*Id*. at 6, 16.)

Finally, Bey asserts a claim for municipal liability against the City of Philadelphia alleging that the City has a policy of malicious prosecution as shown by the initiation, dismissal, and refiling of the charges lodged against him.  (*Id*. at 27.)  He claims the City is thus liable for the actions of ADA Amoroso and the SEPTA police officers because it failed to investigate, supervise, discipline, and educate them on constitutional axioms, treaties, and international laws, rights, and freedoms.  (*Id*. at 28.)  Bey seeks money damages.  (*Id*. at 29.)

Publicly available court dockets reflect that Bey charged under the name of Rashan I. Savage with robbery involving the infliction of serious bodily injury, recklessly endangering another person, simple assault, theft by unlawful taking, and related charges.  *Commonwealth v. Savage*, MC-51-CR-9513-2022 (M.C. Philadelphia).  At a preliminary hearing on June 9, 2022, the charges were held for court.  On October 19 and 26, 2022, orders were entered to conduct a mental health evaluation to determine whether Bey was competent to stand trial.  At another preliminary hearing on November 15, 2022, the charges were dismissed for lack of evidence and Bey was released from custody.  The criminal complaint was then refiled on December 9, 2022

but dismissed for lack of prosecution on March 27, 2023. The charges were refiled again on April 12, 2023 but again dismissed for lack of prosecution on June 6, 2023. Finally, the charges were reinstated on August 11, 2023 and a commitment order was entered on February 15, 2024. The case remains pending and Bey remains in custody.

**II.     STANDARD OF REVIEW**

The Court will grant Bey leave to proceed *in forma pauperis*.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the court to dismiss the complaint if it fails to state a claim. Here, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Bey is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013)).

---

[3] Because Bey is a prisoner, he must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

## III. DISCUSSION

Bey asserts constitutional violations. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

### A. ADA Amoroso

Bey brings § 1983 claims against ADA Amoroso asserting that she sought to have him detained for a mental health evaluation, engaged with the SEPTA officers in a "fraudulent non-disclosure of adhesion impaired contracting" that resulted in his being falsely imprisoned, and refiled criminal charges against him after the Common Pleas Judge dismissed them. These claims are not plausible.

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v.*

6

*Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).  The allegations concerning Amoroso – bringing charges, refiling the charges, and seeking a mental health evaluation – all involve her actions representing the Commonwealth in Bey's criminal case.  Accordingly, she is absolutely immune from liability under § 1983.  *See*, *e.g.*, *Corbin v. James*, No. 22-4212, 2022 WL 17995548, at *8 (E.D. Pa. Dec. 29, 2022) (holding that prosecutor was absolutely immune from § 1983 claim based on barratry).[4]

To the extent that Bey raises state law claims against Amoroso for barratry and champerty, Pennsylvania law affords absolute immunity to prosecutors from tort claims that are based on actions taken or statements made in the course of their official duties.  *See Durham v. McElynn*, 772 A.2d 68, 69-70 (Pa. 2001) (holding that assistant district attorneys are entitled to absolute immunity from liability for actions taken in their official capacity); *McCormick v. Specter*, 275 A.2d 688 (Pa. Super. Ct. 1971) (holding that a district attorney who was sued for defamation as a result of statements made at a press conference was immune, since the statements were made in the course of his official duties to inform the public regarding a matter pending in his office).  Moreover, even if Amoroso were not immune, the claims for champerty and barratry are not plausible.

Under Pennsylvania law, champerty is a "bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject to be recovered." *Belfonte v. Miller*, 243 A.2d 150, 152 (Pa. Super Ct. 1968); *see Richette v. Pennsylvania R.R.*, 187

---

[4] To the extent Bey asserts § 1983 claims against Amoroso in her official capacity, those claims are actually claims against the Philadelphia District Attorney's Office.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  However, district attorney's offices in Pennsylvania are not entities subject to suit under § 1983.  *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability").  Accordingly, official capacity claims against Amoroso are also not plausible.

A.2d 910 (Pa. 1963) (stating that a champertous agreement is "one in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share of what is recovered."). In order to state a claim for champerty, three elements must be alleged plausibly: the party involved must be one who has no legitimate interest in the suit, the party must expend his own money in prosecuting the suit, and the party must be entitled by the bargain to a share in the proceeds of the suit. *Belfonte*, 243 A.2d at 152. As Amoroso is a prosecutor representing the Commonwealth, she has a legitimate interest in the criminal case. Also, a criminal prosecution has no monetary proceeds. Accordingly, Bey's champerty claim is not plausible.

In Pennsylvania, the tort of barratry has been elevated to a crime, specifically a misdemeanor of the third degree, that occurs when a person "vexes others with unjust and vexatious suits." 18 Pa. Cons. Stat. Ann. § 5109; *Andresen v. Pennsylvania*, 20-989, 2022 WL 3045843, at *1 (M.D. Pa. Aug. 2, 2022). The United States Supreme Court has described barratry as one of the "evils" associated with encouraging unnecessary litigation, the others being "maintenance" – the helping of another to prosecute a suit, and champerty. *In re Primus*, 436 U.S. 412, 425 n.15 (1978) (citing 4 W. Blackstone, Commentaries 134–136). Barratry is a "continuing practice of maintenance or champerty." *Id*. It follows then that the failure to allege a plausible champerty claim means that there can be no continuing practice of champerty upon which to allege a plausible barratry claim. All claims against Amoroso are, accordingly, dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

  **B.**  **Official Capacity Claims against SEPTA Police Officers**

Bey has named SEPTA police officers Carney, Michetti, and Grabov as defendants in both their individual and official capacities. Claims against SEPTA police officers named in their

official capacities are indistinguishable from claims against SEPTA. *Graham*, 473 U.S. at 165-66. SEPTA is a Pennsylvania government agency that is treated as a municipality for purposes of claims brought under § 1983. *See Brown v. SEPTA*, 539 F. App'x 25, 27 (3d Cir. 2013); *Thompson v. Se. Pennsylvania Transportation Auth.*, No. 20-756, 2021 WL 2414610, at *3 (E.D. Pa. June 14, 2021), *aff'd*, No. 21-2286, 2022 WL 17958629 (3d Cir. Dec. 27, 2022).

To plead a basis for liability against a municipal entity under § 1983, a plaintiff must allege that a municipal policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman*, 914 F.3d at 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply

9

paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Bey makes policy allegations regarding the City of Philadelphia, but not SEPTA. Specifically, he asserts that the City has a policy of malicious prosecution as shown by the initiation, dismissal, and refiling of the charges lodged against him. (Compl. at 27.) Even if the Court were to liberally construe this allegation as being directed at SEPTA rather than the City, it fails to state a plausible basis for municipal liability. First, it is conclusory and thus insufficient. *Iqbal*, 556 U.S. at 678. Second, a policy allegation based solely on the incident involved in this case is not plausible; rather Bey must allege sufficient facts to show that SEPTA had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to Bey's injury. *Estate of Roman*, 914 F.3d at 798. Accordingly, Bey's official capacity/municipal liability claims will be dismissed.

      C.      **City of Philadelphia**

As just stated, Bey asserts a *Monell* claim against the City based on an implausible policy allegation. He also claims that the City is liable for the actions of ADA Amoroso and the SEPTA police officers because it failed to investigate, supervise, discipline, and educate them. To the extent Bey seeks to hold the City liable because it employed the individual Defendants, the claim is not plausible. First, municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Second, even construing the Complaint liberally, none of the individual Defendants appears to be an employee of the City since assistant district attorneys are employees of the Philadelphia District Attorney's Office and SEPTA police

officers are employees of SEPTA. Thus, there can be no plausible claim that the City is liable to Bey based on the actions of the individual Defendants. As Bey has not alleged a plausible *Monell* claim either, the City will be dismissed as a Defendant with prejudice.

### D. Individual Capacity Claims against the SEPTA Police Officers

Bey asserts individual capacity § 1983 claims against Carney, Michetti, and Grabov based on two distinct incidents: (1) the May 4, 2022 investigative stop by Grabov at 15th and Market Streets lasting 20-45 minutes during which Carney was hostile and made allegedly false allegations that Bey was involved in a robbery (Compl. at 13, 19-20); and (2) the June 7, 2022 arrest at the same location, during which Defendant Michetti allegedly refused to produce a warrant or describe the basis for the warrant (*id*. at 13, 20), resulting in Bey's subsequent detention from June 7 to November 15, 2022.

#### 1. The May 4 Investigatory Stop

##### a. *Terry v. Ohio*

A § 1983 claim based on false detention or arrest is grounded in the Fourth Amendment, which protects private citizens from unreasonable searches and seizures by the government. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). For a seizure to be reasonable, the Fourth Amendment requires that the seizure be "effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). In *Terry*, however, the Supreme Court recognized an exception to the warrant requirement, permitting police officers with "reasonable, articulable suspicion" of possible criminal activity to conduct an investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop." *United States v.*

*Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (citations and internal quotation marks omitted). Further, the reasonable suspicion standard considers "the totality of the circumstances" faced by the officer and an officer's "reasonable mistake of fact does not violate the Fourth Amendment." *Id.* at 397-398 (citations and internal quotation marks omitted).

To determine whether an investigatory stop was executed within the bounds of the Fourth Amendment, the Supreme Court prescribed a dual inquiry into "whether the officer's action was justified at its inception," in that it was supported by reasonable suspicion, and "whether the manner in which the stop was conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20; *see United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010). A lawful stop and frisk under *Terry* is a seizure that may elevate into a *de facto* arrest, depending on "the reasonableness of the intrusion." *United States v. Edwards*, 53 F.3d 616, 619-20 (3d Cir. 1995). Only if the *Terry* stop escalates into an arrest must the seizure be justified under a higher probable cause standard. *United States v. Sharpe*, 470 U.S. 675, 684 (1985). "[W]hen police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo'" during the course of the stop. *Edwards*, 53 F.3d at 619 (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)); *see also Maryland v. Wilson*, 519 U.S. 408, 414 (1997) ("The risk of harm to both the police and the occupants [of a stopped vehicle] is minimized if the officers routinely exercise unquestioned command of the situation.") (internal citations omitted). Thus, where they have a reasonable suspicion, officers may frisk, handcuff, and detain a suspect while conducting their investigation. *See, e.g., United States v. Burney*, 35 F. App'x 354, 355 (3d Cir. 2002); *United States v. Benitez*, 328 F. App'x 823, 824 (3d Cir. 2009) ("A police officer may also frisk a

12

temporarily detained person if — in addition — they have a reasonable belief that the person is armed and dangerous." (citing *Terry*)).

Bey's Fourth Amendment claim based on the May 4 stop is not plausible under these standards. He concedes he was detained during the investigatory stop for at most forty-five minutes, after which he was released. While he asserts that Carney was aggressive and hostile, Bey also alleges that Carney articulated a reasonable suspicion for the stop, namely that Bey was "on surveillance robbing and assaulting someone at gun-point," and thus possibly armed and dangerous.[5] Since Bey alleges that the officers had a reasonable, articulable suspicion of his possible involvement in armed criminal activity, their conducting an investigatory stop did not plausible violate Bey's Fourth Amendment rights. *Benitez*, 328 F. App'x at 824. Accordingly, this aspect of Bey's claim is dismissed with prejudice.

### b. First Amendment Retaliation

Bey also raises a First Amendment retaliation claim against Carney, Michetti, and Grabov based on the May 4, 2022 stop. He alleges that the stop occurred because he had filed an amended complaint on April 12, 2019 alleging a false arrest claim based on an incident on April 6, 2018, that also happened at 15th and Market Streets. (Compl. at 25-26.) This claim is not plausible.

In order to state a plausible First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,

---

[5] To the extent that Bey seeks to assert a claim based on Carney's verbal hostility, that claim would also not be plausible. Verbal threats or taunts, without more, are insufficient to violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").

and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018). A causal link is plausibly alleged where the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). The timing and pattern of allegedly retaliatory behavior relative to the constitutionally protected conduct is a way that a plaintiff may plead a plausible causal link between the protected conduct and the alleged act of retaliation for purposes of establishing motivation. *See Watson*, 834 F.3d at 422; *see also Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.") A plaintiff must allege that the defendant had knowledge of the protected activity to show that such activity was "a substantial or motivating factor" for the retaliation. *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493-94 (3d Cir. 2002).

Bey's retaliation allegations also fail to provide a sufficient basis upon which a plausible claim can proceed. The retaliatory act, the May 4, 2022 *Terry* stop, allegedly occurred more than three years after the alleged protected conduct, Bey' April 12, 2019 filing of an amended complaint. Bey alleges no facts in the intervening period upon which to base a pattern of antagonism. Thus, the First Amendment claim will be dismissed with prejudice.

### 2. The June 7 Arrest

Bey alleges he was falsely arrested on June 7 and falsely detained from that date until November 15, 2022.[6] "False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'" *Karkut v. Target Corp.,* 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting *Brockington v. Phila.,* 354 F. Supp. 2d 563, 570 n. 8 (E.D. Pa. 2005) (citation omitted)). To state a plausible claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts to show plausibly that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are

---

[6] Although Bey also uses the words "malicious prosecution" in his Complaint (*see* Compl. at 3), he does not allege he was arrested on June 7 pursuant to a warrant and the public records is unclear on this point. An arrest pursuant to a warrant is properly construed as one arising under the Fourth Amendment for malicious prosecution, rather than for false arrest. *See Wallace v. Kato*, 549 U.S. 384, 390 (2007) (explaining false arrest pursuant to a warrant and related imprisonment is generally treated as malicious prosecution claim because the warrant issued pursuant to legal process; thus the claim accrues at the time the charges terminate in the litigant's favor); *Noviho v. Lancaster Cnty. of Pa.*, 683 F. App'x 160, 166 (3d Cir. 2017) (*per curiam*) ("Arrests made pursuant to a 'validly issued — if not validly supported — arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013). Because he does not allege he was arrested pursuant to legal process, but rather appears to assert the Defendants did not have a warrant because they refused to show a warrant to him, the Court will construe the claim as a Fourth Amendment false arrest/false imprisonment claim. Should Bey choose to file an amended complaint, he should include allegations concerning a malicious prosecution claim if he was arrested pursuant to a warrant.

As noted earlier, Bey also uses sovereign citizen verbiage asserting that Carney, Michetti, and Grabov engaged with Amoroso in a "fraudulent non-disclosure of adhesion impaired contracting." (Compl. at 9.) While this allegations may have been intended to be part of Bey's claim, "legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity. *See United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (discussing the futility of the sovereign citizen verbiage in collection claim for student loan); *United States v. Crawford*, No. 19-15776, 2019 WL 5677750, at *1 (D.N.J. Nov. 1, 2019) (holding that criminal defendant's attempt to use fake UCC financing statements against prosecutor was a legal nullity); *Banks v. Florida*, No. 19-756, 2019 WL 7546620, at *1 (M.D. Fla. Dec. 17, 2019), *report and recommendation adopted*, 2020 WL 108983 (M.D. Fla. Jan. 9, 2020) (collecting cases and stating that legal theories espoused by sovereign citizens have been consistently rejected as "utterly frivolous, patently ludicrous, and a waste of . . . the court's time, which is being paid by hard-earned tax dollars").

sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). "To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose." *Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) ((citation omitted); *Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*).

Bey fails to allege that the SEPTA officers lacked probable cause to arrest him on June 7. Even though the public record indicates that the charges were later dismissed and then reinstated several times, this is not alone determinative of whether the officers had or did not have probable cause to make the June 7 arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (holding that the fact that criminal charges were subsequently dismissed is irrelevant to the determination of whether probable cause existed in the first instance); *Shurney v. Scott's Econo Inn, Inc.*, No. 05-196, 2006 WL 1766813, at *5 (W.D. Pa. June 23, 2006) ("the fact that the charges were dismissed at the preliminary hearing stage does not thereby negate the existence of probable cause to support Plaintiff's initial arrest and detention"); *Vassallo v. Timoney*, No. 00-84, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001), *aff'd*, 40 F. App'x 734 (3d Cir. 2002) (quoting *DeFillippo*, 443 U.S. at 36 ("[t]he validity of the arrest does not depend on whether the suspect actually committed the crime" and his later acquittal of the offense for which he is arrested is "irrelevant to the validity of the arrest")).

While his Complaint is lengthy and repetitive, Bey's allegations with regard to June 7 are

quite sparse. Bey asserts only that Defendant Michetti approached him and asked him for identification, stating there was a warrant for Bey's arrest, but that Michetti refused to produce the warrant. (Compl. at 13, 20.) Bey was then allegedly arrested for the April 29 robbery when he produced identification showing his name was Rashan I. Savage. (*Id*.) There are no allegations at all that Carney and Grabov were involved in the June 7 arrest and Bey fails to provide sufficient factual allegations in support of his Fourth Amendment claims against Michetti. He does not provide any details about the circumstances surrounding the arrest and detainment, including any affirmative allegation that Michetti lacked probable cause to believe he had committed the robbery for which he was arrested on that day. The allegations regarding Bey's interview with SEPTA police on April 30, 2022 and his assertion that the robbery victim on some unstated date failed to identify Bey from a photo lineup, are not an affirmative assertion that Michetti lacked probable cause to arrest Bey on June 7. In short, Bey has simply not pled sufficient allegations about the June 7 arrest and detainment to support an inference that they were unconstitutional. *See Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all of the allegations against them in the underlying criminal proceedings were false); *Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment and malicious prosecution claims because plaintiff failed to assert a plausible claim of lack of

probable cause where plaintiff, while alleging that he was twice arrested, did not have drugs in his possession, did not break the law and the police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"). Without additional details about the June 7 arrest and subsequent detainment, and the Defendants' alleged lack of probable cause, Bey's Fourth Amendment claims for false arrest and false imprisonment are undeveloped and will be dismissed.

### 3. Other Allegations

Bey asserts that while he was in custody at SEPTA police headquarters after his June 7 arrest he had to wear "an arm band that clearly indicated [he] was unlawfully arrested," was handcuffed and placed in a cold cell when he refused to be fingerprinted, and was not allowed to make a phone call. He also asserts that after his February 15th hearing he was allegedly placed in a cell, strip searched, had his legal material temporarily held, handcuffed to another prisoner, and transferred to Curran-Fromhold Correctional Center. His request for court transcripts were also refused and documents he submitted to the court were not filed on the docket. Because Bey fails to assert that any named Defendant was personally involved in creating the conditions under which he was confined after his arrest, or was personally involved in refusing to file his documents, these claim will be dismissed with prejudice. *See Rode*, 845 F.2d at 1207.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Bey's Complaint because his claims are not plausible as pled. The following claims are dismissed with prejudice: (1) Bey's claims against ADA Amoroso and the City of Philadelphia; and (2) his false arrest, false imprisonment and First Amendment retaliation claims against Carney, Michetti, and Grabov based on the May 4, 2022

investigative stop. Bey's claims based on conditions of confinement after his June 7, 2022 arrest and November 15, 2023 hearing will be dismissed without prejudice, but with no leave to amend those claims in this case. Bey must bring a new civil action if he seeks to pursue those claims against a defendant who was personally involved in a violation of his constitutional rights. Bey's claims against Carney, Michetti, and Grabov based on the June 7, 2022 arrest and detainment will be dismissed without prejudice. Bey will be granted an opportunity to file an amended complaint if he is able to cure the defects the Court has identified in his June 7, 2022 false arrest and false imprisonment claim. Should he file an amended complaint, Bey is again advised to "avoid invocations of alchemistic, archaic, and irrelevant formalisms that are unlikely to bring him relief in *any* court of law." *Savage v. Lederer*, No. 19-1114, 2019 WL 1303944, at *2 (E.D. Pa. Mar. 20, 2019) (emphasis in original). Bey should provide merely a short plain statement of facts and "flesh out [his] allegations by . . . explaining in [the] amended complaint the 'who, what, where, when and why' of [his] claim." *Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022).

      An appropriate Order with additional information about amendment will be entered separately.

*NITZA I. QUIÑONES ALEJANDRO, J.*